# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael E. Hamm, | ) | Civil Action No.  9:15-2552-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Ms. Tiffaney Jones, Case Manager; | ) | |
| Dr. Gothard, Psychologist; and | ) | |
| J. Michael Brown, S.C.D.C. Chaplain, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action was originally filed by the <u>pro se</u> Plaintiff in the South Carolina Court of Common Pleas.  The case was subsequently removed to this Court by the Defendants on the ground that Plaintiff is seeking relief under 42 U.S.C.§ 1983 and also under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 28, 2016.  As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by the Court on January 29, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response.  Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on February 22, 2016, following which the Defendants filed a reply on March 3, 2016, and Plaintiff filed a sur reply on



1

March 21, 2016.

The Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff is a civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C. Code Ann. § 44-48-60, et seq.  Under the SVPA, an individual convicted of a sexually violent offense may continue to be held following release from a prison sentence if they are classified as a sexually violent predator.  See S.C. Code Ann. § § 44-48-60, 44-48-70.  The South Carolina Department of Corrections (SCDC) and the South Carolina Department of Mental Health have entered into an interagency agreement whereby the sexually violent predator treatment program residents are housed in a segregated location within the Broad River Correctional Institution (BCI), which is part of the SCDC.  Scaturo Affidavit.

Plaintiff alleges in his verified Complaint[2] that on or about April 5, 2015, he sent a Request to Staff to the Defendant Dr. Gothard, a psychologist, requesting to have his case manager (the Defendant Jones) terminated because she was not doing her job properly and also because, due to his religious beliefs, he wanted a male case manager.  See also attachment to Plaintiff's Complaint (Request to Staff form).  Plaintiff alleges that he had attached to his Request to Staff form a Declaration/Change of Religion form showing that he was classifying himself as a "True Worshiper"

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.  The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



as his religious preference. <u>See</u> <u>also</u> <u>attachment to Plaintiff's Complaint</u> (Declaration/Change of Religion form). Plaintiff alleges that "somehow" this form was sent to the Defendant Brown (a Chaplain), who recommended disapproval of Plaintiff's request.[3] Plaintiff questions Brown's right or ability to say what his [Plaintiff's] belief is.

        Plaintiff further alleges that on or about December 16, 2009 he became an ordained minister. <u>See</u> <u>also</u> <u>attachment to Plaintiff's Complaint</u> (Certificate of Ordination from Universal Life Church). Plaintiff alleges that it is up to him as to what to believe, that Chaplain Brown has no right to be involved in his case because he [Plaintiff] is not an inmate with the SCDC, and that as a minister he [Plaintiff] can decide scripture for himself. Plaintiff alleges that to deny him his right to freedom of religion violates both his constitutional rights and his rights under the RLUIPA. In the relief portion of his Complaint, Plaintiff seeks as relief that he be acknowledged as a minister with his belief being a "True Worshiper", as well as to have the Department of Mental Health not to be able to assign female case managers to "True Worshiper's" due "to our beliefs". <u>See</u> <u>generally</u>, <u>Verified Complaint</u>. On August 19, 2015, Plaintiff amended his Complaint to request as additional relief that the Defendants be prohibited from having him evaluated by a female psychologist for this same reason. <u>See</u> Court Docket Nos. 13, 15.

        In support of summary judgment in the case the Defendant Dr. Kelly Gothard has submitted an affidavit wherein she attests that she is employed by the Department of Mental Health as the Clinical Chief Psychologist for the SVP Treatment Program. Dr. Gothard attests that her

---

    [3]Plaintiff's Exhibit (Declaration/Change of Religion form) bears a notation from the Defendant Brown that reads as follows: "'True worshiper' <u>not</u> identified as faith or denomination. Is name of music ministry site of Jody McCalla in Jacksonville, Florida with Potter's House Church. Name also of Christian musical group. Name of music ministry of Indonesian Christian church. I recommend disapproval of request".



responsibilities include conducting annual review evaluations of residents (such as the Plaintiff) who have been civilly committed to the SVP Treatment Program and testifying at the annual review hearing as necessary. She has also been involved with the planning, directing and coordination of the psychological and clinical services for the Treatment Program. Dr. Gothard attests that she works closely with Holly Scaturo, the Program Director. Dr. Gothard attests that she is very familiar with the Plaintiff, including the reasons for his admission to the program, his progress and conduct as a resident, and the treatment and services he receives from his treatment team, including his case manager, the Defendant Tiffany Jones.

Dr. Gothard attests that in November 2013, with the assistance of the SCDC Chaplain at BCI, the SVP Treatment Program developed a Declaration/Change of Religion form because there were program residents who were routinely changing their religious affiliation so as to allow them different privileges and attendance at different religious functions. Dr. Gothard attests that this form was developed in order to require residents to declare their religious preference, if they had one, to address the manipulative conduct of the residents, and to bring some order and direction to the provision of religious services. Dr. Gothard attests that Plaintiff completed a Declaration/Change of Religion form on November 7, 2013, in which he indicated his religious preference was "True Worshiper". Dr. Gothard attests that this form was then provided to the Defendant Michael Brown, the Chaplain for the Broad River Correctional Institution, who provides guidance and consulting on religious issues in accordance with the interagency agreement between the SCDC and the Department of Mental Health. Dr. Gothard attests that Chaplain Brown did some research and concluded that "True Worshiper" was not a recognized faith group, and he so advised the treatment Program staff. Even so, Dr. Gothard attests that Chaplain Brown's findings did not negate nor have any effect on

4



Plaintiff's declaration of religious preference, as the SVP Treatment Program has not prevented Plaintiff from being an adherent of "True Worshiper", to the extent that is his religious preference. Dr. Gothard further attests that she is unaware of any religious tenents or beliefs that Plaintiff has as a "True Worshiper", with the exception that in April 2015 Plaintiff sent her a Request to Staff requesting that Tiffany Jones be terminated as his case manager since she is a female, and that he be assigned a male case manager "due to his religious beliefs".

Dr. Gothard attests that Plaintiff never explained how the assignment of a female case manager was inconsistent with or contrary to his religious beliefs. Further, Dr. Gothard noted that Plaintiff has consistently been assigned female case managers since at least 2012, and that Jones has been his case manager since October 2013. Dr. Gothard attests that the co-facilitators for Plaintiff's "group" have also largely been female (six different female co-facilitators, including Jones) dating back to early 2013, and that she has no recollection of any complaints from the Plaintiff about the female gender of his case managers or group co-facilitators prior to her receipt of Plaintiff's Request to Staff form in April 2015. Dr. Gothard attests that after consultation with Chaplain Brown it was determined that Plaintiff's religious beliefs were not an appropriate basis under the circumstances for changing case managers and more specifically for not assigning a female case manager, which in itself would be discriminatory.

Dr. Gothard attests that the SVP Treatment Program population has individuals with a history of manipulative behaviors, including the Plaintiff, and that in managing the Treatment Program, including the therapeutic services, they simply cannot give the residents the ability to decide who their case manager will be, as to do so would only serve to encourage manipulative behaviors. Dr. Gothard further attests that they cannot give the residents the ability to override clinical decisions

5



in any respect. Dr. Gothard attests that certain case managers or other team members work better

with different individuals or different situations, that assignments are made by clinical staff based

upon clinical judgment and programmatic needs, and that if a resident is dissatisfied with a case

manager it is often because the resident is being challenged in treatment to take responsibility for his

behavior, is frustrated that he cannot manipulate that case manager, or does not like the fact that the

case manager is enforcing policies.

        Specifically with respect to the Defendant Jones, Dr. Gothard attests that she is

personally well acquainted with the abilities of Jones as a case manager, that she does an excellent

job, and that there is no clinical basis for removing her as Plaintiff's case manager. Dr. Gothard has

also attached as Exhibit A to her affidavit a redacted copy of an SVP Treatment Program treatment

team note from October 9, 2014, which addressed the treatment team's processing of some concerns

Plaintiff was having with his case manager (Jones). This treatment team note reads:

> [Plaintiff] has shown some resistence towards [Jones], and claims she is difficult to
> work with. Yet, [Plaintiff] acknowledged "[Jones] is trying to make me a better
> person than I am, and she see something in me that I don't see in myself and taking
> me to a place that I might lose myself". [Plaintiff] admitted that his frustration
> towards [Jones] was really directed toward himself, stating "I am really mad about
> me".

See Exhibit A, attached to Gothard Affidavit.

        Dr. Gothard attests that the decision to maintain Jones as Plaintiff's case manager is

as a result of her performance in that capacity, and has not been done to deny Plaintiff some religious

accommodation. Dr. Gothard further attests that, as previously indicated, the treatment program staff

cannot make personnel assignment decisions based on a resident's assertion of religious beliefs, and

they cannot discriminate against an entire gender of employees based upon any assertion of religious



beliefs. Dr. Gothard further notes that Plaintiff did not claim a "religious" preference for male case managers until after his other requests for the removal of Jones as his case manager were unsuccessful. Dr. Gothard also notes Plaintiff's history of working with female case managers and co-facilitators prior to Jones, that he never raised a religious objection to those individuals, and that in her professional opinion Plaintiff has raised a religious objection here simply in an attempt to manipulate the system and get what he wants.

Finally, Gothard attests that to the extent Plaintiff is asking for recognition and treatment as a minister given his claimed ordination by the Universal Life Church, the SVP treatment program purposefully does not permit a resident to take any type of leadership or mentoring role over other residents, as the SVP population has residents with a history of manipulating and being manipulated, as well as residents of various levels of intellectual and adaptive functioning. Dr. Gothard attests that having a resident act in the capacity of a minister would place that resident in a position of power or authority that could result in opportunity for a manipulation or inappropriate influence. As such, the SVP Treatment Program has implemented a policy of not allowing residents to serve in a leadership role over other residents in any religious worship, prayer or study group, and that while residents who wish to practice their religious beliefs in a group setting are allowed to do so, they do so only with the assistance and on-site participation of a volunteer group leader as approved for entry into the BCI by the SCDC Chaplaincy Service. See generally, Gothard Affidavit, with attached exhibits.

The Defendants have also submitted an affidavit from Holly Scaturo, who attests that she is employed by the Department of Mental Health as the Director of the Sexually Violent Predator Treatment Program. Scaturo attest that the residents of the Sexually Violent Predator Treatment



Program are housed in BCI pursuant to an interagency agreement between the Department of Mental Health and the SCDC, with the program being operated within the Edisto and Congaree Units at BCI.

Scaturo attests that the interagency agreement includes a provision entitled "Chaplain Services", which provides that the SCDC will make available its Chief of the Pastoral Services Branch to the Department of Mental Health for consultation and advisement about religious issues effecting the SVP Treatment Program residents. Scaturo attests that pursuant to this provision, the SVP Treatment Program utilized the Chaplaincy Service at BCI to consult on issues related to religious or pastoral services provided to SVP Treatment Program residents. The SVP Treatment Program does not have any Chaplains or persons qualified on religious issues, so the SVP Treatment Program staff typically follow the decisions by the BCI Chaplaincy Service on such issues as books, publications, and other materials, as well as whether religious items are permitted. In this capacity, the BCI Chaplaincy Service also advises the treatment program with respect to the approval of religious volunteers and visitors.

Scaturo attests that she is familiar with the Plaintiff, and that while Plaintiff contends in this lawsuit that he should be "acknowledged as a minister", that she is unaware of any specific requests by the Plaintiff to serve as a minister to another resident, and that any event Plaintiff (as a resident of the treatment program) is not permitted to serve as a minister to other residents in a group setting or individually. Scaturo attests that effective July 1, 2013 the SVP Treatment Program implemented a policy of not allowing residents to serve in a leadership or mentoring role over other residents in any religious worship, prayer or study group. Scaturo attests that this policy was implemented because of therapeutic and safety concerns associated with placing residents in a leadership position over other residents, with resident led religious exercises not being appropriate



in a setting where the residents include persons with serious mental illnesses, persons with predatory tendencies, persons who are manipulators, persons who are vulnerable to manipulation or intimidation or undue influence, and persons of varying degrees of intellectual and adaptive functioning.

Scaturo further attests that in November 2013 the SVP Treatment Program developed and implemented a Declaration/Change of Religion form for residents to use to provide their religious preference, and that Plaintiff completed one of these forms on November 7, 2013 in which he declared his religious preference as "True Worshiper". Scaturo attests that she is not familiar with that religion or its beliefs or tenents, and a copy of Plaintiff's form was provided to the Defendant Chaplain Brown for his insight. Scaturo attests that Chaplain Brown did some research and advised the program that he could find no information on any faith group known as "True Worshiper". In any event, Scaturo further attests that Plaintiff has not been prevented by her or any other SVP Treatment Program staff from claiming "True Worshiper" as his religion, nor have they taken any action to interfere with his religious beliefs, whatever those may be. Scaturo does attest, however, that in April 2015 Plaintiff attempted to utilize his "religious beliefs" as a means to have Tiffany Jones, a licensed professional counselor, removed as his case manager, but that the SVP Treatment Program staff did not allow Plaintiff's claim of a religious belief to serve as a basis for removing his female case manager and to discriminate in assignment of case managers on the basis of gender. Scaturo attests that, for the reasons already explained by Dr. Gothard in her affidavit, the SVP Treatment Program cannot allow residents to make or manipulate treatment team assignments or direct clinical decision making. Scaturo also attests that, other than this one issue, she is unaware of any other requests by Plaintiff for an accommodation or services due to his "True Worshiper"

9



religion.  See generally, Scaturo Affidavit.

   The Defendant Michael Brown has submitted an Affidavit wherein he attests that he is currently the Acting Chief of Chaplains for the SCDC (a position he has held since November 2015), and that prior to that time he was the Senior Chaplain at BCI.  Brown attests that he is familiar with the Plaintiff, who is part of the SVP Treatment Program.  Brown attests that in June 2013 he consulted with the administrators of the treatment program regarding the use of resident leaders for religious group worship and study, and that he concurred with the ultimate decision whereby the SVP Treatment Program administrators adopted a policy prohibiting a resident from serving in any leadership or mentoring role over other residents for purposes of religious worship or study groups.  Brown further attests that he consulted with the program administrators regarding the benefits of using a Declaration/Change of Religion form for SVP Treatment Program residents, which is similar to the process followed in the SCDC, and which allows for a more orderly and efficient handling of resident requests for religious programing and services by identifying appropriate support responses.

   With respect to Plaintiff's submission of a Declaration/Change of Religion form in November 2013 declaring his religious preference to be "True Worshiper", Brown attests that he is not familiar with any religious faith group identified as "True Worshiper", nor was he able to find any resource that identified "True Worshiper" as a faith or denomination, or of what the basic tenets of such a religion would be.  Brown attests that he communicated his findings on Plaintiff's form and returned that form to the SVP Treatment Program administrators for their information.  With respect to Plaintiff's request to have Jones removed as his case manager based on his religious beliefs because Jones is a female, Brown attests that he recommended to the program administrators that this request be denied because such a request could not, in Brown's view, be justified for religious

10



reasons and presented a number of other issues with the administration of the program as well as the discriminatory effect on female employees. Even so, Brown attests that the ultimate decision was made by the SVP Treatment Program Administrators - he simply made a recommendation. <u>See generally</u>, <u>Brown Affidavit</u>.

As an attachment to his memorandum in opposition to the Defendants' motion, Plaintiff has attached a copy of what purports to be a memorandum in opposition to a motion for preliminary injunction filed by the Plaintiff in another pending lawsuit.[4] Plaintiff has underlined parts of a footnote on this paper which reads "but it is worth noting that the 'rules of SCDC are technically not applicable to the SVPTP which is administered by the South Carolina Department of Mental Health". This exhibit apparently relates to Plaintiff's complaint that Chaplain Brown, as an employee of the SCDC, did not have any authority to be giving religious advice or consultations to the SVP Treatment Program Administrators.

<u>Discussion</u>

The Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991).

---

[4]Plaintiff is a frequent filer of litigation in this Court. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].



Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

## (Constitutional Claim)

As a civilly committed inmate, Plaintiff has a liberty interest in receiving reasonable care in reasonably non-restrictive conditions of confinement. See Youngberg v. Romeo, 457 U.S. 307, 324 (1982). In considering the constitutionality of the conditions of Plaintiff's confinement, he most closely resembles the custody status of a pre-trial detainee. Lingle v . Kibby, 526 Fed.Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013) [same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010)["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial



detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007));

Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at * 9 (W.D.Wash. Aug. 12, 2011)[The rights of

those civilly committed are analyzed using same standards that apply to pretrial detainees], adopted

by, 2011 WL 5118750 (W.D.Wash. Oct. 27, 2011); cf. Larch v. Gintoli, 04-1962, 2006 WL 895019,

at ** 3-4 (D.S.C. Mar. 31, 2006).  Therefore, Plaintiff's conditions of confinement claim is evaluated

under the due process clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535, n.

16 (1979); but see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the

Fourteenth Amendment guarantees at least Eighth Amendment protections].

        Considered pursuant to this standard of review, Plaintiff has failed to submit evidence

sufficient to create a genuine issue of fact as to whether any named Defendant has violated his

constitutional rights.  Although detained persons retain their First Amendment Rights, there is

nothing unconstitutional about reasonable restrictions and policies being applied to those First

Amendment Rights in order to maintain order and the security of the institution.  Cf. In re Long Term

Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir.

1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of

policies and practices that in their judgment are needed to preserve internal order and discipline and

to maintain institutional security'"] (quoting Bell, 441 U.S. at 547)).[5]  As such, as a civilly committed

inmate, liability may be imposed for the conditions under which Plaintiff is being held only if the

---

     [5]Although these cases deal with conditions for prisoners, the Court may rely on cases from
a prison setting in addressing the religious rights of SVPTP residents.  Cf. Beaulieu v. Ludeman, 690
F.3d 1017, 1028 (8th Cir. 2012); Lingle, 526 Fed. Appx. at 667; Treece v. S.C. Dept. of Mental
Health, No. 08-3909, 2010 WL 3781726 (D.S.C. Feb. 19, 2010).



policies and practices at issue can be deemed arbitrary and capricious. <u>Cf</u>. <u>Youngberg</u>, 457 U.S. at 323 [liability may be imposed only when evidence is submitted to show that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment"]; <u>Patten v. Nichols</u>, 274 F.3d 829, 843 (4th Cir. 2001)[Defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional"]. Nothing in the evidence presented to this Court shows any such conduct by any named Defendant or any other mental health official.

   First, to the extent Plaintiff's complaint is that he wants to be acknowledged as a minister of the Universal Life Church, there is no evidence that anyone is discriminating against him on that basis. No one is telling him what his religion can or cannot be; however, that does mean that he has a "constitutional right" to lead or conduct religious services with other inmates (if that is what he is requesting). Defendants correctly note that the policy prohibiting SVP residents from conducting such programs has already been reviewed and upheld by the federal courts, including in this District. <u>See</u> <u>Guess v. McGill</u>, No. 13-2260, 2014 WL 5106735, at * 9 (D.S.C. Oct. 10, 2014); <u>Ballou v. Fuller</u>, No. 12-1595, 2013 WL 1316020 at * * 14-15 (D.S.C. Mar. 4, 2013), <u>adopted by</u>, 2013 WL 1310505 (D.S.C. Mar. 29, 2013); <u>Turner v. Hamblin</u>, 590 Fed.Appx. 616, 619-620 (7th Cir. 2014) [Prisons may ban inmate-led services to prevent the rise of inmate authority figure]; <u>see generally</u> <u>Shabazz v. Arkansas Dep't of Corrections</u>, 157 Fed.Appx. 944, 946 (8th Cir. Nov. 17, 2005)[Upholding restriction of not allowing the Plaintiff to personally perform religious services "upon recognition that prison security may be jeopardized if an inmate is put in a position of religious



leadership over other inmates, or if an inmate has the opportunity to use religious services to engage in disruptive communications."]; <u>Rodgers v. Shearidin</u>, Nos. 09-1962 & 10-3110, 2011 WL 4459092 at * 7 (D.Md. Sept. 22, 2011)["Restricting group meetings may be necessary to prevent the possibility of riots or gang meetings."]; <u>Johnson Bey v. Lane</u>, 863 F.2d 1308 (7th Cir. 1988)[Regulation prohibiting inmates from conducting their own religious services permissible]; <u>see</u> <u>also</u> <u>Anderson v. Angelone</u>, 123 F.3d 1197, 1198-1199 (9th Cir. 1997)[Prohibition of inmate-led religious services does not violate the First Amendment]; <u>Jones v. Bradley</u>, 590 F.2d 294, 296 (9th Cir. 1979) ["Appropriate restrictions on chapel use, including requiring the presence of an outside sponsor for chapel meetings, are reasonable to maintain order and security"]; <u>cf.</u> <u>In re Long Term Administrative Segregation of Inmates Designated as Five Percenters</u>, 174 F.3d 464, 469 (4th Cir. 1999) [Finding that the reasons behind the challenged SCDC policy "are not simply legitimate penological interests - they are compelling"]. Plaintiff has presented no distinguishing facts or arguments to require this Court to revisit or reanalyze this issue a second time. <u>Cf.</u> <u>Aloe Creme Laboratories, Inc.</u>, 425 F.2d at 1296 ["The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient."].

       As for Plaintiff's complaint that the Defendants should be prohibited from assigning him female case managers or psychologists, this claim is also without merit. Initially, the undersigned is constrained to note that Plaintiff has not presented any actual evidence to this Court to show that any such restriction is even a tenet of the "True Worshiper" religion, assuming for

15



purposes of summary judgment that this is a religion.[6]  Rather, he just says that it is.  House v. New

Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient

to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even

though pro se litigants are held to less stringent pleading standards than attorneys the court is not

required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; cf. Malik v. Sligh,

No. 11-1064, 2012 WL 3834850, at * 5 (D.S.C. September 4, 2012), aff'd. 507 Fed. Appx. 294 (4th

Cir. 2013) [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create

a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility

of Plaintiff's self serving claims]; see also Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897,

at * 3 (D.S.C. November 24, 2010), citing Larken v. Perkins, 22 Fed. Appx. 114, 115 (4th Cir.

2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and

unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"].

The Defendants also correctly note that the Fourth Circuit has held that equal

employment opportunities for females within the prison setting is a legitimate governmental

objective, and Plaintiff has failed to present any evidence to show that the Defendants' decision not

to place such a restriction on the assignment of their case managers and psychologists is arbitrary and

unprofessional under the circumstances.  Cf. Turner v. Safley, 482 U.S. 78, 89-90 (1987) [discussing

---

[6]Cf. Five Percenters, 174 F.3d at 468 [Declining in that case to engage in the "difficult and
delicate task" of examining the nature and sincerity of the inmates' professed beliefs, and assuming
for purposes of that decision that Five Percenters (the purported "religion" in that case) are a
religious group entitled to First Amendment protection].  This assumption does not represent a
finding by this Court, and the Defendants remain free to contest any designation of the "True
Worshipers" as a "religion" for purposes of a free exercise claim, if they choose to do so.



four-factor test to be utilized when assessing reasonableness of regulation which impinges on a First Amendment right], Patton, 274 F.3d at 843 [Defendants actions must have "so substantially departed from professional standards that the decisions can only be described as arbitrary and unprofessional"]; see Lee v. Downs, 641 F.2d 1117, 1119-1120 (4th Cir. 1981) [Recognizing that "the general employment of guards may be required to be open to persons of both sexes under Equal Employment Opportunity legislation]; Canedy v. Boardman, 16 F.3d 183, 187 (7th Cir. 1994) ["A State's interest in providing Equal Employment Opportunity for female guards needs to be weighed against the privacy rights of prisoner"].

The Defendants have provided substantial evidence to show the policy and reasons behind the SVP Treatment Program's assignment of personnel, which establishes a legitimate penological interest for their actions, and in light of Plaintiff's own failure to present any evidence to show how this substantially burdens his ability to exercise his religious beliefs (or that his "male only" request is even a fundamental tenet of his "religion"), the Defendants are entitled to summary judgment on this claim. Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995); Ajaj v. United States, 479 F.Supp.2d 501, 539 (D.S.C. 2007)["Courts have long held that religious practices may be restricted by prison authorities if the restrictions imposed are reasonably related to legitimate, penological interests . . . . "]; Baber, 977 F.2d at 874-875 [Once a moving party submits evidence to show that judgment on the pleadings is appropriate, in order to



avoid summary judgment the opposing party must respond with specific facts showing this is a genuine issue for trial].

Therefore, Plaintiff's constitutional claim is without merit.

## II.

### (RLUIPA Claim)

Plaintiff has also asserted his claim in this case pursuant to the RLUIPA, which is analyzed under a different standard than that of an Eighth Amendment claim.[7] The RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that imposition of the burden on that person 1) is in furtherance of a compelling governmental interest, and 2) is the least restrictive means of furthering that compelling governmental interest. See 2 U.S.C. § 2000cc-1(a).

> RLUIPA analysis proceeds in two steps. First, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise." Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir.2015). "If the inmate clears this hurdle, the burden shifts to the government to prove its policy furthers a compelling governmental interest by the least restrictive means." Id.

Wright v. Lassiter, No. 15-6958, 2016 WL 626377 at * 1 (4th Cir. Feb. 17, 2016).

---

[7]The Defendants correctly note in their motion that Plaintiff has only named three individuals in this case, and that there is no individual liability under the RLUIPA. See Rondelman v. Rouse, 569 F.3d 182, 188 (4th Cir. 2009); Haight v. Thompson, 763 F.3d 554, 571 (6th Cir. 2014); Stewart v. Beach, 701 F.3d 1322, 1334 (10th Cir. 2012); see also Malik v. Ozmint, No. 07-387, 2008 WL 701517, * 12 (D.S.C. Feb. 13, 2008). However, Plaintiff can pursue his claim under the RLUIPA against the Defendants in their official capacities for injunctive relief. Malik, 2008 WL 701517, at * 13. Plaintiff only seeks injunctive and/or declaratory relief in this case, and giving Plaintiff's complaint the liberal construction to which he is entitled as a pro se litigant, the undersigned has therefore assumed for purposes of summary judgment that Plaintiff has sued the Defendants under the RLUIPA in their official capacities.



The RLUIPA requires a "more searching standard of review . . . than the standard used in parallel constitutional claims: strict scrutiny instead of reasonableness". Loveless v. Lee, 472 F.3d 174, 186 (4th Cir. 2006) (internal quotation marks omitted).

With respect to whether Plaintiff is "substantially burdened" in the exercise of his religious rights by not being able to preside over group religious meetings or services as a minister of the Universal Life Church (again, assuming that is what Plaintiff's claim is), the undersigned does not find that such a restriction places a "substantial burden" on the exercise of Plaintiff's religious rights under the applicable case law. Cf. Baranowski v. Hort, 486 F.3d 112, 124-125 (5th Cir. 2007)[Refusal to allow Jewish inmates to congregate when rabbi or outside volunteer was not present, was not a substantial burden]; Countryman v. Palmer, No. 11-852, 2012 WL 4340659 at * 4 (D.Nev. Aug. 7, 2012)(citing Adkins v. Kasper, 393 F.3d 559 (5th Cir. 2009), cert. denied, 125 S.Ct. 2549 (2005)[Held prison did not place substantial burden on Plaintiff's request to congregate with other members of his faith when no outside volunteer was present]). Even if this were considered to be a "substantial burden" on Plaintiff's exercise of his religious rights, for the reasons already stated this policy is in furtherance of a compelling governmental interest, and Plaintiff has presented no evidence (or even argument) to show a less restrictive means of satisfying this compelling governmental interest while allowing him to "minister" to other residents. Rodgers, 2011 WL 4459092 at * 7 ["Restricting group meetings may be necessary to prevent the possibility of riots or gang meetings."]; Jones v. Roth, 950 F.Supp. 254, 257 (N.D.Ill. 1996); cf. Johnson Bey, 863 F.2d



at 1308 [Regulation prohibiting inmates from conducting their own religious services permissible].[8] Therefore, this claim is without merit.

As for Plaintiff's complaint about females being allowed to serve as his case manager and psychologist, for the reasons already discussed, supra, Plaintiff has failed to present any evidence to show that the Defendants' personnel assignment decisions place any substantial burden on his religious beliefs as a "True Worshiper", or indeed that this is even a belief of that "religion". Incumaa, 791 F.3d at 525 [Inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise"]; Johnson v. Lewis, No. 13-148, 2016 WL 830831, at *4 5 (W.D.N.C. Mar. 3, 2016)[A " 'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [ ] or one that forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand." (quoting Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted)]; cf. Jehovah v. Clarke, 798 F.3d 169, 180 (4th Cir. 2015) [Where Plaintiff took issue with exposure to non-Christians as cellmates, but not with any effect on his religious activities, the Fourth Circuit only found that claim only survived a motion to dismiss because he outlined specifically how one cell mate burdened, mocked, and harassed him. Further, even assuming for purposes of summary judgment only that Plaintiff has shown that having females assigned to these roles violates the tenets of his religious beliefs as a "True Worshiper" (which he has not), and further assuming for purposes

---

[8]Although these cases address the compelling governmental interest at issue under a constitutional standard, not under the standard of an RLUIPA, the findings by the courts in these cases are still material to Plaintiff's RLUIPA claim.



of summary judgment that his continuing to have females assigned to him in these roles is a substantial burden on his free exercise rights, the program administrators certainly have a compelling governmental interest in being able to assign personnel based on treatment needs and credentials, as well as in not allowing discrimination against female employees and professionals in the SVP Program by residents. See, discussion, supra. In determining this issue, the reviewing court must not substitute "its judgment in place of the experience and expertise of prison officials;" Hoevenaar v. Lazaroff, 422 F.3d 366, 370 (6th Cir. 2006); and Plaintiff has presented no evidence to show a less restrictive means of granting his wishes, nor has Plaintiff presented any evidence to show that he is otherwise unable to worship pursuant to the dictates of his chosen religion. As the United States Supreme Court held in Cutter v. Wilkerson,

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests . . . . [Congress] anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of cost and limited resources." . . .

Cutter, 544 U.S. at 722. See also Youngberg, 457 U.S. at 323-324 [Decisions made by the appropriate professional are entitled to a presumption of correctness, and liability may be imposed only when evidence is submitted to show a substantial departure from accepted professional judgment, practice or standards].

The Defendants have met their burden of showing that the continuing assignment of staff personnel within the treatment program, including females, to the Plaintiff on the basis of merit and credentials and staffing needs is the least restrictive means of furthering the compelling



governmental interest involved; <u>Versatile v. Johnson</u>, No. 09-120, 2011 WL 5119259, * 4 (E.D.Va. Oct. 27, 2011)[Once a substantial burden is shown, the burden is on the defendant to show the practice at issue is the least restrictive means of furthering a compelling governmental interest], <u>aff'd by</u>, 474 Fed. Appx. 385 (4th Cir. 2012), <u>cert</u>. <u>denied</u>, 113 S.Ct. 1261 (2013); and Plaintiff has presented no evidence to give rise to a genuine issue of fact that the RLUIPA is being violated in this case. <u>Cutter</u>, 544 U.S. at 726 [Explaining that "[s]hould inmate request for religious accommodation become excessive, and pose unjustified burdens on other institutionalized person, or jeopardize the effective function of an institution, the facility would be free to resist the imposition]; <u>cf</u>. <u>Treece</u>, 2010 WL 3781726, at * 13 ["There is no affirmative duty requiring that prison administrators provide each inmate with a spiritual counselor of his choice], citing <u>Allen v. Toombs</u>, 827 F.3d 563, 569 (9th Cir. 1987). Therefore, the Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

April 11, 2016
Charleston, South Carolina

_____
Bristow Marchant
United States Magistrate Judge

22



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

