IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael E. Hamm, ) | Civil Action No. 9:15-2552-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Ms. Tiffaney Jones, Case Manager; ) | |
| Dr. Gothard, Psychologist; and ) | |
| J. Michael Brown, S.C.D.C. Chaplain, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter comes before the Court on the Report and Recommendation (R & R) of the Magistrate Judge (Dkt. No. 38), recommending that Defendant's motion for summary judgment be granted. Plaintiff has filed objections to the R & R (Dkt. No. 43). For the reasons stated below, the Court adopts the R & R as an order of this Court.

## I. Background

Plaintiff is a civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C. Code Ann. §44-48-60, *et seq.*, and housed within the Broad River Correctional Institution (BRCI). Plaintiff is undergoing treatment authorized by an interagency agreement with the South Carolina Department of Corrections (SCDC) and the South Carolina Department of Mental Health. In his complaint, Plaintiff bring claims pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.*, alleging that Defendant Jones, his female case manager and a Licensed Professional Counselor, should be removed from his case and that he should be assigned a male case manager due to his religious beliefs. (Dkt. No. 1-1). Plaintiff submitted a Request to Staff form to Defendant Gothard on or about April 5, 2015, alleging general dissatisfaction with

1

Defendant Jones and requested a reassignment to a male case manager based on his religious beliefs. (Dkt. No. 1-1 at 10). Additionally, Plaintiff alleges that he submitted a Declaration/Change of Religion form classifying his religious preference as "True Worshiper." (Dkt. No. 1-1 at 4). Defendant Brown recommended disapproval of the request to staff (Dkt. No. 1-1 at 4), and Defendant Gothard subsequently denied the request to staff. (Dkt. No. 1-1 at 11).

On January 28, 2016, Defendants filed a motion for summary judgment (Dkt. No. 31), to which Plaintiff filed a response in opposition to the Defendants' motion on February 22, 2016, (Dkt. No 34). Defendants filed a reply on March 3, 2016 (Dkt. No. 35), and Plaintiff filed a sur reply on March 21, 2016 (Dkt. No. 37). On April 11, 2016, the Magistrate Judge issued an R & R, recommending Defendants' motion for summary judgment be granted and the case dismissed (Dkt. No. 38). Plaintiff filed objections to portions of the R & R on May 9, 2016. (Dkt. No. 43). In addition to an articulation of objections to specific portions of the R &R, Plaintiff produced his Tenets of Faith (Dkt. No. 43 at 7) and an additional 56 pages purported to be representations of his Tenets of Faith. (Dkt. No. 43-1 at 1-56). Plaintiff specifically cites to various scriptures outlining women and their roles including Leviticus 12:2-5 (women after childbirth are unclean), Leviticus 15:19 (menstruous women are unclean), Leviticus 15:25-28 (a woman with abnormal discharge is unclean), I Corinthians 14:33-35 (women to be silent in churches), and I Timothy 2:11-14 (a woman prohibited from teaching or having authority over a man).

## II. Legal Standard

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "agree, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord.* Fed. R. Civ. P. 72(b).

However, as to the portions of the R & R to which no objection is made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 71 advisory committee note). Additionally, the Court need not give any explanation for adopting the R & R in the absence of specific objections by the parties. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983) ("Absent objection, we do not believe that any explanation need be given for adopting the report.")

In reviewing this complaint, the Court is mindful of Plaintiff's *pro se* status. This Court is charged with liberally construing the pleadings of a *pro se* litigant. *See, e.g., De 'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a *pro se* plaintiff's clear failure to allege facts that set forth a cognizable claim, or that a court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining

3

whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hos. V. Am. Nat'l. Red Cross*, 101, F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp. Inc., 190 F.3d 285, 287 (4th Cir. 1999).

### III. Discussion

Plaintiff objects to the R & R's recommendation that summary judgment be granted on five grounds. The Court will address each in turn.

*A. Constitutional Claims*

First, Plaintiff contends the Defendants have not produced evidence or material facts to show his belief affects or alters the order of security at the SVP Treatment Program nor where this rationale is part of the policy and procedures within the SVP Treatment Program. (Dkt. No. 43 at 2). However, Plaintiff's objection contains no new analysis or arguments. Additionally, Plaintiff has not presented or shown any new evidence to persuade this Court otherwise. As such, his objection is without merit.

Secondly, Plaintiff objects on grounds that he wants acknowledgment as a True Worshipper and as a minister of that faith. (Dkt. No. 43 at 3). Though Plaintiff affirms he is not attempting to lead religious group services, Plaintiff requests this Court grant him the right to minister daily, which can be done anytime scripture is mentioned, and assert the SVP Treatment Program has no legal right to state Plaintiff cannot minister. (Dkt. No. 43 at 3-4). Generally, courts accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment. *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989); *Turner v. Safley*, 482 U.S. 78, 85 (1987); *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999). Accordingly, it has long been held that a prisoner's right to practice his religion is subject to prison policies and regulations that are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4th Cir. 2006). The SVP Treatment Program's policy of prohibiting its residents from leading or conducting religious services with other inmates has been previously upheld. *Guess v McGill*, No. 13-2260, 2014 WL 5106735, at *9 (D.S.C. Oct. 10, 2014); *Ballou v. Fuller*, No. 12-1595, 2013 WL 1316020 at * * 14-15 (D.S.C. Marc. 4, 2013), adopted by 2013 WL 1310505 (D.S.C. Mar. 29, 2013); *see also Turner v. Hamblin*, 590 Fed. App'x 616, 619-620 (7th Cir. 2014) (prisons may ban inmate-led services to prevent the rise of inmate authority figures); *Jones v. Bradley*, 590 F.2d 294, 296 (9th Cir. 1979) ("Appropriate restrictions on chapel use, including requiring the presence of an outside sponsor for chapel meetings are reasonable to maintain order and security"); *cf. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999) (finding that the reasons

5

behind the challenged SCDC policy "are not simply legitimate penological interests- they are compelling).

Because Plaintiff has failed to show or provide any evidence that anyone within the SVP Treatment Program is discriminating against him as a minister of the True Worshiper belief, this court will not address whether he "has a right to minister on a daily basis." (Dkt. No. 43 at 3). However, Plaintiff is subject to the policies of the SVP Treatment Program prohibiting leading or conducting religious services with other inmates as addressed above.

Plaintiff also objects to the Magistrate Judge's finding that Plaintiff's request to replace his female case manager is without merit because he has not produced any documentation or evidence to show the restriction of a female case manager of a tenet of his faith. (Dkt. No. 43 at 4). Because Plaintiff has since provided this Court with his tenets (Dkt. No. 43 at 7), we must assess whether a female case manager or psychologist impinges upon his constitutional rights under his belief as a True Worshiper.

First, this Court must analyze the issue of whether the challenged governmental action "infringes upon sincerely held religious belief," *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir.1996), and then apply the *Turner* factors to determine if the regulation restricting the religious practice is "reasonably related to legitimate penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). *Turner v. Safley*, 482 U.S. 78, sets forth four factors that courts should consider when assessing the reasonableness of a regulation which impinges on a First Amendment right. First, courts must examine whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. *Id.* at 89-90. Next, courts consider whether there is an alternative means available to the prison inmates to exercise the right. *Id.* at 90. Third, courts evaluate whether an accommodation would have a "significant

6

'ripple effect'" on the guards, other inmates, and prison resources. *Id.* Lastly, the courts assess whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Id.* at 90-91.

Plaintiff contends that the SVP Treatment Program violated his First Amendment free-exercise right when it refused to remove Defendant Jones as his case manager and Defendant Dr. Gothard as his clinical psychologist. For the purposes of this motion, the Court assumes that it is Plaintiff's articulation that no female shall have authority over him is a sincerely held religious belief of his True Worshiper faith. As stated by the Supreme Court, "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990) (quoting *Hernandez v. Commissioner,* 490 U.S. 680, 699 (1989). *See also Five Percenters*, 174 F.3d at 468 (declining to engage in the difficult and delicate task of examining the nature and sincerity of the inmates' professed beliefs, and assuming for purposes of that decision that a purported religion in that case was entitled to First Amendment protection).

Turning to *Turner*'s first factor, the decision not to remove Defendant Jones as Plaintiff's case manager was rationally connected to SVP Treatment Program's legitimate penological interest. As both Defendant Gothard and Holly Scaturo, Director of the SVP Treatment Program, affirm, residents cannot make or manipulate treatment team assignments or any clinical decision-making for any reasons, religious or otherwise, in order for the SVP Treatment Program to function properly and fulfill its therapeutic role. (Dkt. No. 31-2 at 4 and Dkt. No. 31-3 at 3-4). Assignments for case managers and team members are made by clinical staff based upon clinical judgment and programmatic needs. (Dkt. No. 31-2 at 4). In addition, the SVP Treatment

Program cannot discriminate against an entire gender of employees. *See Lee v. Downs*, 641 F.2d 1117, 1119-1120 (4th Cir. 1981) (recognizing that "the general employment of guards may be required to be open to persons of both sexes under Equal Employment Opportunity legislation); *Canedy v. Boardman*, 16 F.3d 183, 187 (7th Cir. 1994) ("A State's interest in providing equal employment opportunity for female guards needs to be weighed against the privacy rights or prisoner"). These factors are a valid rational connection between the SVP Treatment Program's interest in the treatment and equality of both the inmates and its employees.

Next, applying the second Turner factor, there has been no evidence presented to suggest that Plaintiff has insufficient alternative means to practice his faith. A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so. *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004); *see also Hammons v. Saffle,* 348 F.3d 1250, 1256 (10th Cir.2003). Courts are particularly deferential to the policy judgment of corrections officials in cases where other avenues remain available to inmates for the exercise of the asserted right. *Turner,* 482 U.S. at 90; *Hammons v. Saffle*, 348 F.3d 1250, 1255 (10th Cir. 2003). In one such case, the Supreme Court found that Muslim prisoners had alternative means of exercising their religion, despite a regulation which made it impossible to practice a particular Muslim ritual. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Here, as indicated by Holly Scaturo, the SVP Treatment Program, through the BRCI Chaplaincy Service, participates in a rigorous inquiry into religious standards and accommodations including religious functions, religious dietary requirements, religious volunteers and visitors. (Dkt. No. 31-3 at 2). As noted earlier, Plaintiff has failed to show or provide any evidence that anyone within the SVP Treatment Program is discriminating against

8

him in his belief or that he is being restricted from any of the above accommodations as a True Worshipper.

Turning to the third *Turner* prong, accommodating an inmate's request to restrict female case managers or female psychologists would have a significant and detrimental ripple effect on guards, other inmates, and prison resources. This accommodation would place increased demands on clinical staff and violate equal employment opportunities outlined in both federal and state laws. In addition, Plaintiff's notion of restricting female authority pushes the outer bounds of absurdity. Too broad a definition would allow Plaintiff to not only undermine the management and leadership of the SVP Treatment Director, Holly Scaturo, but also call the authority of South Carolina Governor Nikki Haley and any other female government employee acting in her official capacity into question. As stated by the Supreme Court,

> Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices . . . . Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.

*Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879, (1990) (internal quotations omitted)

And in the final step of the *Turner* analysis, there are no easy alternatives to restricting female case managers or female psychologists that would further both the Plaintiff's religious ideals as a True Worshipper and SVP Treatment Program's interest in promoting equal employment amongst its employees and facilitating rehabilitation for all reasons indicated above.

Because Plaintiff's claim does not pass muster under *Turner*'s four-step analysis, this Court finds that the employment of a female case manager and female psychologist within the

9

SVP Treatment Program to Plaintiff does not impinge upon his Constitutional rights under his belief as a True Worshipper.

For his final objection relating to his constitutional claims, Plaintiff attempts to clarify that this case is not to be confused with objections to female employment in general (Dkt. No. 43 at 8-9). In his objections, the Plaintiff states that his case "has nothing to do with employment—Ms. Jones has another 180 plus residents to choose from, to teach and have authority over." (Dkt. No. 43 at 9). For the reasons set out above, this Court will not discuss the role of equal employment opportunities in a prison setting again. Because the objection is general and offers no additional insight or evidence for his claims, it need not be explored.

For the reasons indicated above, Defendants are entitled to summary judgment on Plaintiff's constitutional claims.

## B. RLUIPA Claims

Plaintiff's final objections are based on his Tenets as a True Worshiper. He broadly argues that his RLUIPA claims are valid and Defendants are in violation of RLUIPA (Dkt. No. 43 at 9). Plaintiff's RLUIPA claims are twofold: First, Plaintiff requests an acknowledgment as a True Worshipper minister. Secondly, Plaintiff requests that female case managers and female psychologists not be assigned to work with him.

RLUIPA states that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that imposition of the burden on that persons (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest. U.S.C §2000cc-1(a). An analysis of RLUPIA proceeds in two inquiries. First, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious

10

exercise." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). RLUIPA broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Then, "if the inmate clears this hurdle, the burden shifts to the government to prove its policy furthers a compelling governmental interest by the least restrictive means." *Incumaa v. Stirling*, 791 F.3d at 525. Therefore, the RLUIPA analysis requires "a more searching standard of review . . . than the standard used in parallel constitutional claims: strict scrutiny instead of reasonableness." *Loveless v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006) (internal quotation marks omitted).

With respect to Plaintiff's request to be acknowledged as a True Worshiper minister and that he be able to minister daily, the assertion falls within RLUIPA's definition of "religious exercise." *Spratt v. Rhode Island Dep't of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007) (citing that a minister preaching is a form of religious exercise for purposes of RLUIPA); *see also Greene v. Solano Cty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008). Upon review, this Court adopts the Magistrate Judge's opinion that there is no finding that Plaintiff is "substantially burdened" in the exercise of his religious rights. Additionally, the Magistrate Judge correctly noted that Plaintiff also has presented no evidence or argument to show a less restrictive means of satisfying this compelling governmental interest. For those reasons and the reasons previously stated in this Order, this claim is without merit.

The Court next turns to Plaintiff's complaint regarding females being allowed to serve as his case manager and psychologist qualifies as a substantial burden. The Supreme Court has defined "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of

11

her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand," *Sherbert v. Verner,* 374 U.S. 398, 404 (1963). Taking its guidance from the Supreme Court, the Fourth Circuit has determined "a substantial burden on religious exercise occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace, 472 F.3d at 187 (quoting *Thomas,* 450 U.S. at 718). Setting aside Plaintiff's indeterminate definition of "authority," this Court finds that the assignment of female staff personnel including case managers and psychologists to Plaintiff presents a substantial pressure on him to modify his religious beliefs as he must yield to their opinions, recommendations, and findings. Defendants' argument that Plaintiff had a previous history of treating with female case managers as well as other female members of his treatment team and never before raised a religious objection is immaterial. It has been held that a person who "does not adhere steadfastly to every tenant of his faith" may still be sincere about participating in other religious practices. *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988); *see also Malik v. Ozmint*, No. CIVA8053472RBHBHH, 2010 WL 1052708, at *5 (D.S.C. Feb. 16, 2010), *report and recommendation adopted,* No. CIVA805CV03472RBH, 2010 WL 1052660 (D.S.C. Mar. 19, 2010) ( "So if the plaintiff earnestly believed in some theological cocktail of Islam, Rastafarianism, and Heaven's Gate science, then his amalgamation of beliefs could not be substantially burdened, regardless of the logic of their internal or traditional relationship.").

Because Plaintiff has demonstrated that he suffered a substantial burden on his religious exercise, the burden then shifts to Defendants to provide "an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs." *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009) (quoting

*Lovelace*, 472 F.3d at 190). Decisions made by the appropriate professional are entitled to a presumption of correctness and liability may be imposed only when evidence is submitted to show a substantial departure from accepted professional judgment, practice or standards. *Youngberg v. Romeo*, 457 U.S. 307, 323-324 (1982).

The Court agrees with the Magistrate Judge's conclusion that, based on the affidavits presented by Holly Scaturo and Defendant Gothard, Defendants have met their burden of showing that the continuing assignment of staff personnel within the SVP Treatment Program to the Plaintiff on the basis of merit, credentials, and staffing needs is the least restrictive means of furthering the compelling governmental interest involved. Therefore, for the reasons stated by the Magistrate Judge and stated previously in this Order, Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.

## IV. Conclusion

For the reasons stated below, the Court adopts the R & R (Dkt. No. 38) as an order of this Court. Accordingly, Defendant's motion for summary judgment (Dkt. No. 31) is GRANTED, and this case is DISMISSED.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

June 14, 2016
Charleston, South Carolina

13